COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-101-CV

 

 

THE HEIL COMPANY                                                            APPELLANT

 

 

                                                   V.

 

POLAR CORPORATION, AS SURVIVING                                   APPELLEES

ENTITY
OF MERGER BETWEEN PENTRON, INC.

AND
POLAR; AND RICHARD L. FRANK

                                              ------------

 

           FROM
THE 236TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                       I.  Introduction








Appellant The Heil Company (AHeil@) challenges
the trial court=s order
denying its motion for summary judgment and granting summary judgment in favor
of appellees Polar Corporation, as the surviving entity of a merger between
Pentron, Inc. (APentron@) and Polar (APolar@), and Richard L. Frank (AFrank@).  In three issues, Heil complains that the
trial court erred by denying its motion for summary judgment, by granting Polar=s motion for summary judgment, and by overruling its objections to
part of Polar=s summary
judgment evidence.  We affirm the trial
court=s judgment as to Polar but reverse and remand the trial court=s judgment as to Frank.

II.  Factual and Procedural Background

Pursuant to a stock purchase
agreement (Athe
Agreement@) dated
October 3, 1995, Pentron and Frank sold all of the issued and outstanding
shares of stock of the Trailmaster Corporation (ATrailmaster@) to
Heil.  Trailmaster was dissolved and
became part of Heil.  Polar purchased
Pentron in October 1995 and merged with Pentron in April 2000.  Polar was the surviving entity after its
merger with Pentron.








The Agreement between
Pentron, Frank, and Heil contained a number of representations, warranties, and
covenants.  Among those were Pentron=s and Frank=s
representations and warranties in Section 2.1.12 that ATrailmaster has good and marketable title to . . . those properties
and assets listed and described in Schedule 2.1.12.@  The Schedule listed and
described three bridge cranes.  The
Agreement also contained an indemnity provision providing that Pentron and
Frank would Aindemnify,
defend and hold [Heil] harmless from and against any and all loss, cost, damage
or expense whatsoever . . . resulting from or arising out of any breach by
either of any representation, warranty . . . or covenant.@  The indemnity provision
included a notification procedure whereby Pentron and Frank would have ten days
from the receipt of a AClaim Notice@ to notify Heil if they disputed their liability regarding an
indemnity claim.  Failure to dispute
liability within this time arguably established an obligation to Adefend [the claim] by appropriate proceedings.@

Sometime in 2003, Heil
removed the cranes listed in Schedule 2.1.12 of the Agreement from a property
that Trailmaster had previously leased from TE&J, Inc. (ATE&J@).  Thereafter, in June 2003, TE&J sued Heil,
claiming that the cranes were part of the leased property and that Heil removed
the cranes without TE&J=s approval or consent and without legal authority.  On August 8 and August 22, 2003, Heil mailed
written claim notices to Pentron and Frank demanding that they, in accordance
with the terms of the Agreement, indemnify, defend, and hold Heil harmless from
TE&J=s lawsuit and claims. Polar denied Heil=s demand for indemnification.








After Polar refused to
indemnify Heil, Heil brought a third-party claim against Pentron and Frank.[1]  Heil asserted claims for breach of warranty,
breach of contract, fraud, negligent misrepresentation, declaratory relief, and
attorneys= fees and
costs.  Heil eventually settled with
TE&J, but Heil=s claims
against Polar and Frank remained pending.

Heil filed a traditional
motion for summary judgment on its breach of warranty and breach of contract
claims, and Polar filed a cross-motion for summary judgment on all of Heil=s claims.  Heil objected to
portions of Polar=s summary
judgment evidence, but the trial court overruled Heil=s objections.  The trial court
ultimately denied Heil=s motion for
summary judgment and granted Polar=s motion for summary judgment on all of Heil=s claims and causes of action, dismissing them with prejudice.  As to Frank, the order provides that he
joined in Polar=s motion for
summary judgment.  This appeal followed.

III.  Standard of Review








In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.  Therefore, we
take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant's favor.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  Evidence
that favors the movant=s position
will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).

When both parties move for
summary judgment and the trial court grants one motion and denies the other,
the reviewing court should review both parties= summary judgment evidence and determine all questions presented.  FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000).  The
reviewing court should render the judgment that the trial court should have
rendered.  Id.

IV.  Breach of
Warranty 








In its first issue, Heil
argues that the trial court erred by granting Polar=s motion for summary judgment on Heil=s breach of warranty claim.[2]  In its second issue, Heil argues that the
trial court erred by denying its motion for summary judgment on its breach of
warranty claim because Polar breached the warranties under Sections 2.1.3 and
2.1.6 of the Agreement.  Because Heil=s second issue challenging the trial court=s judgment regarding its breach of warranty and contract claims
coincides with its first issue contesting Polar=s entitlement to summary judgment on the same claims, we will address
them together.  

We apply well-established
rules of contract interpretation and construction to resolve this issue.  The interpretation of an unambiguous contract
is a question of law, which we review de novo. 
MCI Telecommunications Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d
647, 650-51(Tex. 1999).  Our primary
concern when construing a written contract is to ascertain the true intentions
of the parties as expressed in the instrument. 
Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); Calpine
Producer Servs., L.P. v. Wiser Oil Co., 169 S.W.3d 783, 787 (Tex. App.CDallas 2005, no pet.).  This is
achieved by examining and considering the entire writing in an effort to
harmonize and give effect to all provisions of the contract so that none will
be rendered meaningless.  Coker,
650 S.W.2d at 393.  








A contract that can be given
a definite or certain legal meaning is unambiguous as a matter of law.  J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003).  Words used
in an unambiguous contract are given their plain and ordinary meanings unless
the instrument shows that the parties used the words in a technical or
different sense.  Consol. Petroleum
Partners, I, LLC v. Tindle, 168 S.W.3d 894, 898 (Tex. App.CTyler 2005, no pet.) (op. on reh=g).  A contract is ambiguous
when its meaning is uncertain or is reasonably susceptible to more than one
meaning.  Coker, 650 S.W.2d at
393.

A.  The Agreement 

The Agreement is a stock
purchase agreement memorializing Pentron=s and Frank=s desire to
sell and Heil=s desire to
purchase the shares of Trailmaster.  It
is not an agreement solely intended to sell and purchase assets, including
cranes.  Section 2.1 sets forth
twenty-three warranties made by Pentron and Frank, beginning with provisions
relating to Trailmaster=s status as
a duly organized corporation under Texas law and the sale and transfer of the
stock and ending with AEnvironmental
Matters@ (2.1.22) and AGeneral@ issues (2.1.23).

B.  Section 2.1.3








Heil argues that Polar and
Frank breached subsection (iv) of Section 2.1.3 because Athe transaction involving the sale of TE&J=s cranes violated Texas common law and statutory law (e.g., theft and
conversion).@  Polar responds that Section 2.1.3 is
inapplicable under the facts of this case because it does not concern asset
ownership, but the sale of stock.  Heil
replies that Section 2.1.3 is not limited to the sale of shares because it
provides that it is applicable to multiple Atransactions contemplated hereby.@  Alternatively, Heil argues
that Section 2.1.3 is ambiguous, thus creating a fact issue regarding the
parties= intent.  We agree with Polar. 

Section 2.1.3 is set forth
along with the other initial warranties and representations in Section
2.1.  It provides in part:

2.1.3    No
Restriction Against Sale of Shares. 
Subject to obtaining the Required Consents (as that term is defined in
Section 2.1.6 hereof), neither the execution and delivery of the Sellers=
Agreements by Sellers nor the performance by Sellers of the transactions
contemplated hereby or thereby will (i) violate or conflict with
any of the terms of the Trailmaster Charter Documents, (ii) violate or
constitute an occurrence of default under any provision of, or conflict with,
or result in acceleration of any obligation under, or give rise to a right by any
party to terminate its obligations under, any contract, sales commitment,
license, permit, purchase order, security agreement, mortgage, conveyance to
secure debt, note, deed, loan, lease, agreement, instrument, order, judgment,
decree, or other arrangement to which Trailmaster or either Seller is a party
or is otherwise bound or by which any of Trailmaster=s
properties or assets or the Shares are affected, (iii) result in the creation
or imposition of any Lien in favor of any person or entity upon any of the
properties or assets of Trailmaster or the Shares, (iv) result in the
violation or breach of or conflict with any law (including, without limitation,
common law), statute, rule or regulation (collectively, ALaws@) or
(v) constitute an event which, after notice or lapse of time or both, would
result in any such violation, conflict, default, acceleration, or creation or
imposition of any Lien. [Emphasis added.]

 








Section 2.1.3 contains
Pentron=s and Frank=s warranty
that the sale of the Trailmaster stock to Heil would not result in any of the
occurrences provided for in parts (i), (ii), (iii), (iv), or (v).  It addresses only the ARestrictions@ on Pentron=s and Frank=s ability to
sell the stock.  As Polar argues,
Pentron=s and Frank=s status as
owners or lessors of the cranes has no bearing on their warranty under Section
2.1.3(iv) that the sale of the Trailmaster stock would not violate any law,
statute, rule, or regulation. 
Accordingly, we hold that Section 2.1.3 is inapplicable here, is not
reasonably susceptible to more than one meaning, and is unambiguous.  See Coker, 650 S.W.2d at 393.

C.  Section 2.1.6

Heil also argues that it was
entitled to summary judgment on its breach of warranty claim under Section
2.1.6 of the Agreement.  Heil argues that
Polar and Frank breached Section 2.1.6 because TE&J=s authorization or consent was needed to effectuate the sale of the
bridge cranes, which were actually owned by TE&J.  Alternatively, Heil argues that Section 2.1.6
is ambiguous, thus creating a fact issue regarding the parties= intent.  Polar responds that
Section 2.1.6 does not relate to asset ownership.  

Section 2.1.6 provides as
follows:








2.1.6   Consents.  Except as listed or described on Schedule
2.1.6 (the ARequired
Consents@), no
consent, approval, order or authorization of, or registration, declaration
or filing with, any federal, state, county, municipal or local court,
governmental department, commission, board, bureau, agency or instrumentality,
domestic or foreign (AGovernment
Agency@), or
any other person or entity is required to be obtained, satisfied or made by
or with respect to Trailmaster, any assets, properties or operations of
Trailmaster or either Seller, in connection with the execution, delivery or
performance of the Seller=s
Agreements by Sellers.  Without limiting
the generality of any other provision of this Agreement, each Seller will use
its or his best efforts at its or his sole expense to obtain all Required
Consents and shall indemnify, defend and hold Trailmaster and Purchaser
harmless from and against any and all Losses (as defined in Section 7.1 hereof)
incurred in connection therewith or arising therefrom. [Emphasis added.]

 








Section 2.1.6 is inapplicable
because it does not, as Heil contends, constitute a warranty by Pentron and
Frank that they did not need or that they had already received TE&J=s consent or authorization to sell the cranes to Heil.  Rather, it is a warranty relating to consents
required to sell and transfer the stock of Trailmaster to Heil.  According to TE&J=s petition, TE&J entered into a ten-year lease agreement with
Trailmaster beginning on January 1, 1994. 
Heil removed the cranes sometime in 2003, and TE&J sued Heil in June
2003. Thus, based on the record before us, the lease agreement remained in
effect after Heil purchased Trailmaster=s stock, and TE&J did not assert a cause of action against Heil
until Heil removed the cranes from the leased property eight years later.  There is no evidence that the lease agreement
required that TE&J consent to any transfer of Trailmaster stock.  Consequently, Heil has not shown that
TE&J=s consent or authorization was required for Pentron and Frank to sell
Trailmaster=s stock to
Heil.  Accordingly, we hold that Section
2.1.6 is not reasonably susceptible to more than one meaning and is therefore
unambiguous.  See Coker, 650
S.W.2d at 393.[3]

D.  Section 2.1.12








Heil further argues that it
alleged in its third-party petition that Polar and Frank breached Section
2.1.12=s warranty of title in addition to Sections 2.1.3 and 2.1.6.  As such, Heil argues that the trial court
erred by granting summary judgment in favor of Polar on all of its claims and
causes of action because Polar=s motion for summary judgment addressed only Sections 2.1.3 and 2.1.6,
not 2.1.12.  Polar responds that it
indeed addressed Section 2.1.12 in its motion for summary judgment and that the
trial court properly granted its motion for summary judgment because Section
2.1.12, which is the applicable section under the facts of this case, has a
fifteen-month statute of limitations period that has already run.[4]

Polar stated the following in
its summary judgment motion: 

Although
Polar contests the factual contention that Pentron made any misrepresentations
in the Agreement, if any warranty made by Pentron were Abreached,@
Section 2.1.12 would clearly be the applicable section, as it is an express
warranty of ownership of the property listed on Schedule 2.1.12, including the
cranes at issue here. . . .  However, the
Agreement, subject to certain exceptions (which does not include the
representation in '
2.1.12), provides that Aall
representations and warranties of [Pentron and Frank] shall survive the Closing
for a period of 15 months.@. . .  As the Closing occurred on October 3, 1995,
that 15-month period expired in January 1997, more than seven (7) years ago.

 

We hold that Polar asserted Section 2.1.12 as a
ground for summary judgment on Heil=s breach of warranty claim.[5]

Section 2.1.12 provides in
part:








2.1.12   Title
to and Condition of Property. 
Schedule 2.1.12 attached hereto is a complete and correct list and brief
description as of the date of this Agreement of all items of personal property
owned or used by Trailmaster (such list identifying which of such properties
are owned by Trailmaster and all of the leases, licenses or agreements under
which Trailmaster is lessee or licensee or holds or operates any such
property).  Trailmaster has good and
marketable title to all properties and assets used by Trailmaster or held for
use by Trailmaster in connection with the conduct of its business, other than
leased or licensed property, including those properties and assets listed and
described in Schedule 2.1.12 as owned property and assets, in each case
free and clear of any Liens, except for Liens described on Schedule 2.1.12 or
arising from current taxes not yet due and payable.  Each of the leases, licenses and agreements
described in Schedule 2.1.12 is in full force and effect and constitutes a
legal, valid and binding obligation of Trailmaster and the other respective
parties thereto and is enforceable in accordance with its terms, and there is
not under any of such leases, licenses or agreements existing any default of
Trailmaster or of any other parties thereto . . . . [Emphasis added.]

 

Section 8.14 of the Agreement, titled ASurvival of Representations and Warranties,@ provides that Aall
representations and warranties shall survive the Closing for a period of 15
months; provided, however, that . . . the representations and warranties of
Seller set forth in Sections 2.1.1, 2.1.2, 2.1.3, 2.1.5 and 2.1.6 hereof shall
survive the Closing indefinitely.@








Pentron and Frank warranted
in Section 2.1.12 that Trailmaster had good and marketable title to all assets
used by Trailmaster, including those assets listed in Schedule 2.1.12.  Schedule 2.1.12 listed and described the
cranes that Heil subsequently removed from the property leased from
TE&J.  We agree with Polar that
Section 2.1.12 is the applicable provision under the facts of this case
regarding Heil=s breach of
warranty claim.  Heil=s claim under this section, however, is expressly time-barred by the
fifteen-month limitations period in Section 8.14.

We hold that the trial court
did not err by granting Polar=s motion for summary judgment on Heil=s breach of warranty claim because Polar established that it was
entitled to summary judgment on that claim as a matter of law.  See Tex.
R. Civ. P. 166a(c); Grant, 73 S.W.3d at 215.  Accordingly, we overrule Heil=s first issue to the extent Heil argues that the trial court erred by
granting Polar=s motion for
summary judgment on Heil=s breach of
warranty claim, and we overrule Heil=s second issue to the extent it argues that the trial court erred by
denying its motion for summary judgment on its breach of warranty claim.

V.  Breach of Indemnity Contract

In its first issue, Heil
argues that the trial court erred by granting Polar=s motion for summary judgment on its breach of contract/contractual
indemnity claim because a fact issue exists as to whether Polar complied with
the indemnity procedures contained in the Agreement.  In its second issue, Heil argues that the
trial court erred by denying its motion for summary judgment on the same
claim.  We apply the identical rules of
contract interpretation set forth above. 
See Coker, 650 S.W.2d at 393. 









Section 7 of the Agreement
contains an indemnification provision and accompanying procedures applicable
thereto.  Section 7.1(a), titled AIndemnification,@ states, 

[Pentron
and Frank] shall jointly and severally indemnify, defend and hold [Heil]
harmless from and against any and all loss, cost, damage or expense whatsoever
of or to [Heil] . . . resulting from or arising out of any breach by
either of any representation, warranty . . . or covenant . . . contained in
[the Agreement]. [Emphasis added.] 

 

Section 7.1(c), the indemnification procedures,
provides in part,

In the event that any claim or demand for which
[Pentron and Frank] would be liable to [Heil] under this Section 7.1 is
asserted against or sought to be collected by a third
party, [Heil] shall . . . notify [Pentron and Frank] of such claim or demand .
. . . [Pentron and Frank] shall have ten (10) days from receipt of the Claim
Notice (the ANotice
Period@) to
notify Purchaser whether or not [Pentron and Frank] dispute their liability to
[Heil] hereunder with respect to such claim or demand . . . .  In the event that [Pentron and Frank] notify
[Heil] within the Notice Period that [Pentron and Frank] do not dispute such
liability, or in the event [Pentron and Frank] fail to provide the required
notification within the Notice Period, then  . . .  [Pentron and Frank] shall defend by
appropriate proceedings . . . .  
[Emphasis added.]

 








Heil sent an indemnification
claim notice to Pentron and Frank on August 8, 2003, demanding that they
indemnify, defend, and hold Heil harmless from the lawsuit and claims of
TE&J.  Heil claims that Polar=s and Frank=s designated
agent received and signed for the notice on August 11, 2003.  Heil sent a second claim notice to Pentron
and Frank on or about August 22, 2003. 
Polar claims that it first received Heil=s claim notice on August 25, 2003, and that its counsel notified Heil
by telephone within ten days (on August 27, 2003) that Heil did not have an
indemnifiable claim under the Agreement. 

Heil argues that it is
entitled to indemnity under the Agreement. 
Heil argues that Polar and Frank defaulted under Section 7.1(c) of the
agreement because neither Pentron nor Frank provided notice to Heil disputing
their indemnification obligation within ten days of August 11, 2003.  Heil further argues that Polar=s telephone notification on August 27, 2003, failed to comply with
Section 8.3 of the Agreement, which requires that all notices be in writing.[6]  Polar contends that the trial court properly
granted its motion for summary judgment on Heil=s breach of contract claim because Polar did not breach any warranty
under the Agreement that was not time barred; thus, the indemnity provision was
not triggered.  Polar maintains that
Section 7.1(c) Awas not
intended to create a[] situation in which the failure to respond to an
unfounded indemnification demand would create an otherwise-nonexistent
indemnification obligation.@  We agree with Polar.













The language used by the
parties in Sections 7.1(a) and (c) is clear and unambiguous.  The notification procedures contained in
Section 7.1(c) do not become operative unless there is a claim or demand in
which Pentron and Frank would be liable to Heil under Section
7.1(a).  Under Section 7.1(a), Pentron=s and Frank=s
indemnification obligation arises only if there is a breach of any of
Pentron=s and Frank=s
representations, warranties, or covenants under the Agreement.[7]  We determined above that the trial court
properly denied Heil=s breach of
warranty claim under Sections 2.1.3 and 2.1.6 of the Agreement, and we also
determined that the trial court did not err by granting Polar=s motion for summary judgment on Heil=s warranty claim because the limitations period under Section 2.1.12Cthe applicable warrantyCexpired fifteen months after the Agreement was entered into in October
1995.  Because Polar was entitled to
summary judgment as a matter of law on Heil=s breach of warranty claim, Heil has not shown that there was a breachCusing the word=s plain and ordinary meaningCof any representation, warranty, or covenant under Section 7.1(a) that
would trigger the indemnification procedures under Section 7.1(c).  Accordingly, we hold that the trial court did
not err by granting Polar=s motion for
summary judgment on Heil=s breach of
contractual indemnity claim because Polar conclusively established that it was
entitled to summary judgment as a matter of law.  See Tex.
R. Civ. P. 166a(c); Grant, 73 S.W.3d at 215.  We overrule Heil=s first issue to the extent it argues that the trial court erred by
granting Polar=s motion for
summary judgment on its breach of contract claim, and we overrule Heil=s second issue to the extent it argues that the trial court erred by
denying its motion for summary judgment on its breach of contract claim.

VI.  Fraud and Negligent Misrepresentation

In its first issue, Heil
argues that the trial court erred by granting Polar=s motion for summary judgment on Heil=s fraud and negligent misrepresentation claims.  Heil argues that Polar was not entitled to
summary judgment on Heil=s fraud
claim because Polar failed to cite any authority holding that proof of an
independent injury is required to support a fraud claim and because Polar did
not present any evidence in support of its motion.  Polar contends that Heil=s fraud and negligent misrepresentation claims are barred because it
conclusively established that Heil did not suffer any independent injury apart
from the subject matter of the Agreement and that it had no obligation to present
evidence in order to negate those claims.

A.  Fraud








Although a party=s actions may breach duties in tort, contract, or both, Texas has long
recognized that Amere
nonfeasance under a contract creates liability only for breach of contract.@  Crawford v. Ace Sign, Inc.,
917 S.W.2d 12, 13 (Tex. 1996); Jim Walter Homes, Inc. v. Reed, 711
S.W.2d 617, 618 (Tex. 1986).  AWhen the injury is only the economic loss to the subject of a contract
itself, the action sounds in contract alone.@  Reed, 711 S.W.2d
at  618. 
Thus, tort damages are generally not recoverable unless the plaintiff
suffers an injury that is independent and separate from the economic losses
recoverable under a breach of contract claim. 
See Formosa Plastics Corp. USA v. Presidio Eng=rs & Contractors, Inc., 960 S.W.2d
41, 45-47 (Tex. 1998); Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493,
494 (Tex. 1991) (analyzing both the source of the duty and the nature of the
remedy in determining a claim=s characterization as sounding either in contract or tort); see
also Fed. Land Bank Ass=n v. Sloane, 825 S.W.2d 439, 442-43
(Tex. 1991) (adopting independent injury requirement of section 552B of the
Restatement (Second) of Torts).  The
supreme court in Formosa, however, declined to apply the independent
injury requirement to a fraudulent inducement claim.  Formosa, 960 S.W.2d at 47.  The court held,








[T]ort
damages are recoverable for a fraudulent inducement claim irrespective of whether
the fraudulent representations are later subsumed in a contract or whether the
plaintiff only suffers an economic loss related to the subject matter of the
contract.  Allowing the recovery of fraud
damages sounding in tort only when a plaintiff suffers an injury that is
distinct from the economic losses recoverable under a breach of contract claim
is inconsistent with this well-established law, and also ignores the fact that
an independent legal duty, separate from the existence of the contract itself,
precludes the use of fraud to induce a binding agreement.

 

Id.

 








Heil argues that Formosa=s holding is not limited to
fraudulent inducement claims and that Aapplication of the independent injury rule to fraud as a whole has
been expressly rejected by the Texas Supreme Court.@  We decline to adopt Heil=s broad interpretation of Formosa.  In Formosa, the claim at issue was fraudulent
inducement, not fraud.  Id.  The court stated that Presidio brought a Afraudulent inducement of contract claim,@ that tort damages are recoverable for a Afraudulent inducement claim@ in the circumstances described above, and that it disapproved of
prior appellate court opinions holding that tort damages are not recoverable
for a Afraudulent inducement claim@ absent an injury that is distinct from any permissible contractual
damages.  Id. at 43, 47.  Shortly thereafter, in D.S.A., Inc. v.
Hillsboro Independent School District the court reasoned that A[t]he Formosa opinion=s rejection of the independent injury requirement in fraudulent
inducement claims does not extend to claims for negligent
misrepresentation.@  973 S.W.2d 662, 663 (Tex. 1998) (emphasis
added).  And in R.E. Haase v. Glazner,
the court rejected Glazner=s argument (which is very similar to Heil=s argument) that Atort damages for fraud can be recovered even where the plaintiff
suffers only economic loss related to the contract=s subject matter.@  62 S.W.3d 795, 798 (Tex.
2001).  The court reasoned,

In Formosa Plastics, we concluded that
Presidio could bring a fraudulent inducement claim even though its damages consisted
only of economic losses related to the performance and subject matter of the
parties=
contract.  Some of our language in that
opinion suggests that there is no distinction between a claim for fraud and
fraudulent inducement.  Fraudulent
inducement, however, is a particular species of fraud that arises only in the
context of a contract and requires the existence of a contract as part of its
proof. . . .  Formosa Plastics involved
a fraudulent inducement claim . . . .  Thus, the case was correctly
decided as to fraudulent inducement. 
Although economic losses may be recoverable under either fraud or
fraudulent inducement, Formosa Plastics should not be construed to say
that fraud and fraudulent inducement are interchangeable with respect to the
measure of damages that would be recoverable.

 

Id. at
798-99 (emphasis added) (footnotes omitted).








In the instant case, Heil
asserted a claim against Polar and Frank for Afraud,@ not
fraudulent inducement.  Heil alleged that
A[t]he acts of Pentron and Frank in falsely representing that
Trailmaster was the owner of the cranes at issue constitutes fraud.@  Heil neither alleges that
Polar and Frank fraudulently induced it to enter into the Agreement, nor
does Heil point to any such summary judgment evidence.  Heil does not even argue that it alleged a
claim for fraudulent inducement. 
Consequently, the Formosa holding rejecting the independent
injury requirement in fraudulent inducement claims is inapplicable under the
facts of this case, thus leaving us with the standards articulated by the
supreme court prior to Formosa in DeLanney and Reed.  See DeLanney, 809 S.W.2d at 494; Reed,
711 S.W.2d at 618; see also Castle Tex. Production Ltd. P=ship v. Long Trusts, 134 S.W.3d
267, 274 (Tex. App.CTyler 2003,
pet. denied) (A[E]xcept
[for a few] special contexts, and in the absence of independent injury, if a
contract spells out the parties= respective rights regarding a particular matter, the contract, not
common law tort principles, governs any dispute about that matter.@).

Heil sought A[a]ctual damages incurred prior to Pentron and Frank=s specific performance of their defense and indemnity obligations, or
thereafter as consequential damages for their failure to timely defend and
indemnify Heil,@ and
punitive damages for fraud and negligent misrepresentation.  AWhen the only loss or damage is to the subject matter of the contract,
the plaintiff=s action is
ordinarily on the contract.@  DeLanney, 809 S.W.2d at
494.  Heil=s alleged damages or losses arise from the subject matter of the contract,
and Heil has not alleged that it suffered any loss independent of its contract
damages.  Therefore, in the absence of an
independent injury, Heil=s cause of
action sounds only in contract and not in tort.

B.  Negligent Misrepresentation and Summary
Judgment Evidence Burden








As Polar points out, unlike
with its fraud claim, Heil does not contest that its claim for negligent
misrepresentation is barred by the independent injury rule. Heil instead argues
that summary judgment was improperly granted on its negligent misrepresentation
claim because Polar and Frank failed to produce any evidence in support of
Polar=s traditional motion for summary judgment.  Heil asserts this same argument with regard
to its fraud claim.

In general, it is improper to
grant a summary judgment on a deficient pleading=s failure to state a cause of action when the deficiency can be
attacked through a special exception.  In
re B.I.V., 870 S.W.2d 12, 13 (Tex. 1994); Pietila v. Crites, 851
S.W.2d 185, 186 n.2 (Tex. 1993); Massey v. Armco Steel Co., 652 S.W.2d
932, 934 (Tex. 1983); Tex. Dep=t of Corrections v. Herring, 513 S.W.2d
6, 9‑10 (Tex. 1974).  However, when
the pleading deficiency is the type that cannot be cured by an amendment, a
special exception is unnecessary and a summary judgment based on the pleading=s failure to state a legal claim is in order.  See Friesenhahn v. Ryan, 960 S.W.2d
656, 658 (Tex. 1998).








Heil is unable to state a
cause of action for fraud as a matter of law because it has suffered no
independent injury.  Moreover, as we
mentioned above, Formosa=s rejection of the independent
injury requirement in fraudulent inducement claims does not extend to claims
for negligent misrepresentation.  See
Hillsboro ISD, 973 S.W.3d at 663. 
Therefore, the trial court did not err by granting Polar=s motion for summary judgment in the absence of supporting summary
judgment evidence because Heil is unable to state a claim for fraud and
negligent misrepresentation.  See
Friesenhahn, 960 S.W.2d at 658.

We hold that the trial court
did not err by granting Polar=s motion for summary judgment on Heil=s fraud and negligent misrepresentation claims because Polar
conclusively established that it was entitled to summary judgment as a matter
of law.  See Tex. R. Civ. P. 166a(c); Grant, 73
S.W.3d at 215.  Accordingly, we overrule
Heil=s first issue to the extent Heil argues that the trial court erred by
granting Polar=s motion for
summary judgment on Heil=s fraud and
negligent misrepresentation claims.

VII.  Declaratory Judgment

In its first issue, Heil
argues that the trial court erred by granting Polar=s motion for summary judgment on its claim for declaratory
relief.  In its first amended third-party
petition, Heil sought a declaratory judgment finding and declaring the
following:

(a)
Plaintiff=s
claims against Heil, if true, constitute a breach by Pentron and Frank of
express and continuing warranties including warranties 2.1.3 and 2.1.6 and
schedule 2.1.12 of the Stock Purchase Agreement; (b) Plaintiff=s
claims herein constitute a claim or demand for which Pentron and Frank are
liable to defend, indemnify and hold Heil harmless under section 7.1 of the
Stock Purchase Agreement; and (c) Pentron and Frank did not provide timely
notice to Heil disputing their liability and obligation to defend and indemnify
Heil as required under sections 7.1 and 8.3 of the Stock Purchase Agreement.

 








Polar argues that it is entitled to summary
judgment because there was no breach of the Agreement.  We agree. 


Regarding part (a), we determined
that the trial court did not err by granting Polar=s summary judgment motion on Heil=s breach of warranty claim because Sections 2.1.3 and 2.1.6 are
inapplicable and because Heil=s claim under 2.1.12 is time barred. 
Thus, Polar was entitled to summary judgment as a matter of law.  Regarding parts (b) and (c), we determined
that the trial court did not err by granting Polar=s motion for summary judgment on Heil=s breach of contract claim because Polar did not Abreach@ the
Agreement; thus, the procedures articulated in Section 7.1(c) were not
triggered.  Therefore, because Polar is
entitled to summary judgment as a matter of law on the claims underlying the
declarations sought by Heil, Polar is entitled to summary judgment as a matter
of law on Heil=s claim for
declaratory relief.  The trial court did
not err by granting Polar=s motion for
summary judgment on Heil=s
declaratory judgment claim.  Accordingly,
we overrule Heil=s first
issue to the extent Heil argues that the trial court erred by granting Polar=s motion for summary judgment on Heil=s claim for declaratory relief.

VIII.  Joinder of Frank in Polar=s Motion for Summary Judgment








In the final argument of its
first issue, Heil argues that the trial court improperly granted summary
judgment in favor of Frank because Frank did not move for summary
judgment.  Heil thus contends that we
must reverse and remand the trial court=s judgment as it
pertains to Frank.  We agree.

A court may not render
summary judgment in favor of a party to the suit in the absence of a motion for
summary judgment seeking that relief.  See
Mitchell v. Baylor Univ. Med. Ctr., 109 S.W.3d 838, 844 (Tex. App.CDallas 2003, no pet.); Ulloa v. Davila, 860 S.W.2d 202, 204-05
(Tex. App.CSan Antonio
1993, no writ).








Here, the trial court=s order on the motions for summary judgment provides that Frank joined
in Polar=s motion for summary judgment. 
The order states, AThe Court
having considered the motions and briefs, the supporting affidavits, the
joinder of Defendant Richard L. Frank in the Polar Motion, and the arguments of
counsel, concludes as follows: . . . .@  Heil and Polar, however, filed
a joint postsubmission brief stating that although they located filed documents
evidencing Frank=s joinder in
two oppositions to Heil=s cross-motions for summary judgment, they Afailed to locate any document filed by Mr. Frank showing any joinder@ in Polar=s motion for
summary judgment.  Although the brief
indicates that Frank=s counsel Aattended and participated@ in the hearing on the cross-motions for summary judgment, the record
does not show that Frank joined in Polar=s motion for summary judgment or that Frank filed his own motion for
summary judgment.[8]  There is no evidence in the record before us
demonstrating that Frank joined in Polar=s motion for summary judgment, as the trial court=s order indicates.  Accordingly,
we sustain Heil=s first
issue to the extent it argues that the trial court erred by granting summary
judgment in favor of Frank.

IX.  Summary Judgment Evidence

In its third issue, Heil
argues that the trial court abused its discretion by overruling Heil=s objections to an affidavit submitted by Polar in support of Polar=s motion for summary judgment. 
Heil argues that the trial court judicially revised the affidavit and
that the revised testimony is not sworn and is conclusory.








Polar submitted the affidavit
of Don Stover as evidence establishing when Polar actually received Heil=s indemnity claim notice.  The
affidavit is only relevant, however, to issues regarding indemnity notice under
section 7.1(c) of the AgreementCa section that we determined did not become operative because Polar
did not breach any of the representations or warranties complained of by
Heil.  Therefore, because the trial court
could have determined that Polar was entitled to summary judgment as a matter
of law on Heil=s breach of
contract claim without considering the objectionable portions of Stover=s affidavit, we need not ascertain whether the trial court abused its
discretion by overruling Heil=s objections thereto.  We
overrule Heil=s third
issue.

X.  Conclusion

We affirm the trial court=s judgment granting Polar=s motion for summary judgment as to Polar, and we affirm the trial
court=s judgment denying Heil=s cross-motion for summary judgment. 
We reverse and remand for further proceedings in the trial court that
part of the trial court=s judgment
granting summary judgment in favor of Frank. 

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and WALKER, JJ.

 

DELIVERED:
April 6, 2006











[1]Heil
later amended its third-party petition to assert its claims against Polar, as
the surviving entity of the merger between Pentron and Polar, and Frank.





[2]Heil
argues in its first issue that the trial court erred by granting Polar=s
motion for summary judgment on its breach of warranty, breach of contract,
fraud, negligent misrepresentation, and declaratory relief claims.  With the exception of Heil=s
fraud and negligent misrepresentation claims, our opinion addresses Polar=s
entitlement to summary judgment on each claim separately.





[3]Heil
also argues that the Agreement Acontemplates that more than
one warranty might apply to a particular situation since the agreement
expressly provides that the warranties contained in it are >cumulative.=@  Heil is referring to Section 2.1.23(b) of the
Agreement, which provides that the Awarranties and covenants of
Sellers contained in . . . this Agreement are cumulative, and the fact that any
particular occurrence or state of facts may not be covered by any particular
representation, warranty or covenant shall not affect its coverage under any
other representation, warranty or covenant.@  But we have determined above that Heil was
not entitled to summary judgment on its breach of warranty claim under Section
2.1.3 or Section 2.1.6 of the AgreementCthe warranties that Heil
relied upon in its motion for summary judgment. 
Heil=s
argument under Section 2.1.23 is therefore unpersuasive.





[4]Polar
also contends that Heil argues for the first time on appeal that Heil pleaded a
claim under Section 2.1.12 of the Agreement because Heil argued that Polar
breached the warranty in schedule 2.1.12.  After reviewing Heil=s
third-party petition, we hold that Heil pleaded a claim for breach of warranty
under Section 2.1.12.  See Wortham v.
Dow Chem. Co., 179 S.W.3d 189, 199 (Tex. App.CHouston
[14th Dist.] 2005, no pet.) (reasoning that petitions are construed liberally
in favor of the pleader).





[5]See
Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 204 (Tex.
2002) (reasoning that summary judgment cannot be granted except on the grounds
expressly presented in the motion).





[6]Polar
colorfully refers to this argument as an attempt to gain Agotcha@
coverage.





[7]Similar
language is used in Section 7.1(b) of the Agreement: APurchaser
shall indemnify, defend and hold each Seller harmless from and against any and
all Losses resulting from or arising out of any breach of any
representation, warranty or covenant of Purchaser contained in this Agreement.@





[8]And
on appeal, Frank neither filed a brief joining Polar=s
brief, nor did he file his own appellate brief.